### In re WESCH'S ESTATE.
### No. 9507.

Court of Civil Appeals of Texas. San Antonio.
Jan. 23, 1935.

Rehearing Denied Feb. 20, 1935.

Alvin P. Mueller, of Seguin, for appellants.

Schlesinger, Schlesinger & Goodstein, of San Antonio, for appellee.

SMITH, Justice.

This proceeding is one to probate the last will of August Wesch, who died in Bexar county on December 8, 1932, at the age of 85. In his will the testator devised the sum of $5 in cash to each of four daughters, five sons, and a grandson. It was further provided that, after the payment of the special bequests mentioned, the residue of the decedent's estate (estimated in one of the pleadings to be of the value of $4,000), should go to the testator's remaining daughter, Mrs. Thekla Kemper. The testator lived 3 years after making the will.

Three of the sons contested the probate of the will, upon the grounds that the testator, alleged to be 85 years of age, was mentally incapacitated to make the will, and was caused to execute the same by undue influence exerted over him by the principal beneficiary. The instrument was admitted to probate, over said contest, both in the probate court and, on appeal, in the district court, whence this appeal by the contestants.

It was recited in the will that the residue of the estate was being devised to the testator's widowed daughter "because she has been taking care of me and has provided for me and nursed me in my illness."

This appeal rests solely upon a charge of misconduct on the part of the jury. It appears from the record that upon their voir dire examination "each of the jurors stated upon oath (among other assurances of qualification) that none of them had been personally interested in a similar case, the nature of the case having been stated to them before their examination."

It further appears from evidence adduced upon a hearing of contestants' motion for new trial that, after retiring and considering the case for nearly an hour, the jury were divided in their opinions upon the two issues submitted to them, in the proportion of seven for upholding the will and five against, when this incident occurred, as testified to by one of the jurors:

"Well, there was one juror, Mr. Cude, he didn't say anything much for a long time; probably we had been in there nearly an hour, and after a while, why, he began to try to talk, and some of them said: 'Listen at Mr. Cude now; he had got something to say.' So Mr. Cude stood up and made a little talk— something like a fellow would make a speech —and he stated that he owns one hundred acres of land now, or did then, that had been willed to him by his father, and that he had several brothers and sisters but there wasn't anything left to them, and he said he thought it was all right the way that they had it, because it seems that he had been living with the old people, his mother and his father, for several years, and all the other children lived at other places, and that he thought that

it was all right that his father had left this to him, but he stated that in case any of the other children wanted any of it, why, they could have it; that his mother is still living, and is living with him at the present time. So it seemed that he kind of reasoned that that is the reason the property was left to him, because he was taking care of his mother. * * * The poll of the jury stood seven not to break the will and five to break the will before this discussion took place. * * And after that discussion they all agreed to leave the will the way it was—it was after the discussion that we agreed to leave the will the way it was."

This testimony was supported, generally, by the other of the only two jurors put on the stand upon the hearing, and therefore stands uncontradicted. It further appears that very shortly following the "speech" by Juror Cude, apparently upon the next ensuing ballot, and inferably in response to that speech, the jury united in answering the questions favorably to the proponents of the will.

It will be readily observed that the case argued by Juror Cude was in the main similar to the case under consideration by the jury, in that in each the estate of an aged parent was devised to the child who was caring for and providing for the testator in his declining years, to the exclusion of other children. The juror made the point to his fellows that his own experience had demonstrated that this was a just and proper disposition of an estate, in such appealing circumstances as obtained in his case, as in this.

There is no contention here that Juror Cude was prompted by improper motives or considerations. It is apparent, rather, that he was moved by a spontaneous and natural impulse to help his brethren to a decision by this naive recital of his own experience in a similar situation, without thought of the impropriety of his conduct. But it is easily conceivable that this aspect of the approach rendered his argument more effective upon his fellows.

There can be no doubt that the facts show positive misconduct on the part of Juror Cude, both in concealing from the parties the fact that he had had a case similar to this and in exploiting that experience in the jury room. Proponents have not only failed to meet the burden of showing that this misconduct did not injure contestants, but the injurious results appear affirmatively in the fact that the jury, theretofore divided upon the issues, promptly united in resolving those issues so as to uphold the will. It may be

that the evidence in the case was such that no other verdict than that returned could have been rendered, in which case the alleged misconduct of the jury would have been rendered harmless, and the judgment could properly be affirmed. But, as there is no statement of facts before this court, the appeal cannot be disposed of by that process. Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Texas & P. Ry. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950; Wald Transfer & Storage Co. v. Randolph (Tex. Civ. App.) 56 S.W. (2d) 197.

The judgment is reversed, and the cause remanded.